UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 9:25-cv-80014-AMC

OLIVER JAMES,

    Plaintiff,

v.

FLAGLER SYSTEM, INC., a Florida
corporation, THE BREAKERS PALM
BEACH, INC. d/b/a THE BREAKERS
HOTEL, a Florida corporation, CORRIE
O'DEA, an individual, ARTHUR BIRMELIN,
an individual, GINO SILVESTRE, an individual,
and PAUL N LEONE, an individual,

    Defendant.
_____/

## SECOND MOTION FOR SANCTIONS

Defendants, Flagler System, Inc., The Breakers Palm Beach, Inc. d/b/a The Breakers Hotel, Corrie O'Dea, and Paul N Leone (collectively, "Defendants"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, request an order imposing sanctions against Plaintiff, Oliver James, and Plaintiff's counsel, Ronald Weil, and granting Defendants an award of reasonable expenses, including attorneys' fees, incurred for this Motion, and in support state:

### INTRODUCTION

This action is the third forum in which Plaintiff has raised claims of discrimination arising out of the same incident—his trespass and removal from The Breakers' property because of his disruptive behavior, refusals to answer reasonable questions posed by The Breakers security and local police, and violation of The Breakers' rules. First, Plaintiff filed a complaint with the Florida Commission on Human Relations ("FCHR") and received a "no cause" finding—i.e., that "it is unlikely that unlawful discrimination occurred in this matter." Second, Plaintiff appealed the

FCHR's determination via a petition to the Florida Department of Administrative Hearings ("DOAH"). After engaging in extensive discovery and making many admissions of fact that were harmful to his case, Plaintiff voluntarily dismissed his petition days before his final hearing.

Thus, despite this federal action being in early stages, the facts are well-known to Plaintiff and his counsel. Plaintiff has taken discovery from The Breakers and its employees, including witness depositions, and Plaintiff has made many sworn statements in the form of admissions, answers to interrogatories, and deposition testimony.

Yet, Plaintiff's Amended Complaint is full of allegations that are patently false and directly contradict his sworn statements and other public statements, including Plaintiff's posts on TikTok. The falsity of Plaintiff's allegations was known to Plaintiff, and his attorney, at the time the Amended Complaint in this action was filed. In fact, on March 7, 2025, undersigned counsel served its first Motion for Sanctions identifying many of the same false allegations contained in the original Complaint.[1] Despite amending the Complaint shortly after service of the Motion for Sanctions, Plaintiff did not remove his false allegations and, in fact, included additional false allegations. Further, Plaintiff's inclusion of The Breakers' CEO, Paul Leone, as a defendant in his § 1981 claim has no basis in law and is nothing more than a transparent attempt to harass Mr. Leone and The Breakers. Accordingly, sanctions against Plaintiff and his attorney are warranted under Rule 11.

## ARGUMENT

Rule 11 imposes an obligation on attorneys to certify that, before presenting the Court with any pleading, the attorney has both (1) conducted a reasonable inquiry, and (2) determined that the document is well-grounded in fact, legally tenable, and not presented for an improper purpose.

---

[1] Defendant's first Motion for Sanctions is attached as **Exhibit 1**.

Fed. R. Civ. P. 11(b). The Court uses an objective standard for testing conduct under Rule 11. First, the Court must determine whether a party's claims were "objectively frivolous" resulting from the party's "deliberate indifference to obvious facts" or "when the plain language of an applicable statute and the case law preclude relief." *Baker v. Alederman*, 158 F.3d 516, 524 (11th Cir. 1998). Then, the Court must determine whether the person who signed the pleadings should have been aware that they were frivolous. *Id.*

Here, Plaintiff raises claims that are frivolous under Rule 11. First, all of Plaintiff's claims are grounded on false allegations that directly contradict Plaintiff's sworn statements. Many of these false allegations were included in Plaintiff's original Complaint, and Plaintiff alleged the same false allegations after Defendants served their first Motion for Sanctions on March 7, 2025. Further, Plaintiff included <u>additional</u> false allegations in his Amended Complaint that were not contained within the original Complaint. Finally, Plaintiff's purported claim against Mr. Leone is completely without any basis in law and is presented for an improper purpose—to harass Mr. Leone and The Breakers. Accordingly, Plaintiff's Amended Complaint does not comply with Rule 11, and sanctions are warranted.

**A. Even after amending the Complaint, Plaintiff's claims are based on patently false allegations that contradict Plaintiff's sworn statements.**

Plaintiff's Amended Complaint solely relies on his (false) allegations that The Breakers, and its employees, discriminated against Plaintiff based on his race.[2] Specifically, Plaintiff claims that he was singled out based on his race for removal from The Breakers' property. He claims that he was reading a book on The Breakers' Ocean Lawn when he was approached by a security officer employed by The Breakers. Am. Compl. [D.E. 20] ¶¶ 15–16. The Breakers' security officer told

---

[2] Although Plaintiff raises four separate causes of action against various subsets of the four Defendants, his allegations all arise from the same interaction during which he claims Defendants discriminated against him on the basis of his race (allegations which are untrue and which Defendants expressly deny).

3

Plaintiff that he was violating The Breakers' rule against using professional photography equipment and that he was disturbing other guests of the hotel based on Plaintiff's loud noises and yelling. Plaintiff claims that he was not disturbing other guests, that his removal was motivated by racial profiling, and The Breakers' stated rationale for removing Plaintiff from its property is pretext for discrimination. Am. Compl. [D.E. 20] ¶ 17, 19. Plaintiff claims that, because of his removal from The Breakers, he was unable to attend and speak at the "Literacy Day" event hosted by the Barbara Bush Foundation—which was the purpose of his trip to Palm Beach. Am. Compl. [D.E. 20] ¶ 14–15.

Based on Plaintiff's own sworn admissions, each key allegation in this case is false. They are directly contradicted by Plaintiff's sworn testimony, including his deposition on October 24, 2024 and his Responses to The Breakers' Requests for Admissions on August 28, 2024, taken during the prior litigation.[3] The contradictions are clear when compared in the chart, below:

| **Plaintiff's Allegation** | **Plaintiff's Sworn Testimony** |
|---|---|
| "Mr. James was standing by himself on an expanse of the Hotel's lawn denominated 'The Ocean Lawn' with his camera phone mounted on a small tripod. He was rehearsing, reading from a book entitled, '101 Essays That Will Change the Way You Think.'"<br><br>**Am. Compl. [D.E. 20] ¶ 15.** | Q: So you get to this lawn area and you decide this is where you plan to film. Walk me through your process when you're getting ready to livestream. How do you set yourself up?<br><br>A: Usually with some type of movement, maybe dancing, working out, any type of movement.<br><br>**Ptf.'s Depo. Tr., at 43:11-16.**<br><br>Q: Do you ever get nervous reading on camera?<br><br>A: Yes, ma'am.<br><br>Q: Do you do anything to get yourself in the right head space or hype yourself up?<br><br>A: Yes, ma'am. |

---

[3] A copy of the relevant excerpts of Plaintiff's deposition transcript is attached as **Exhibit 2**, and a copy of Plaintiff's sworn Admissions is attached as **Exhibit 3**.

|  | Q: What do you do to hype yourself up?<br><br>A: Dance, exercise, talk to myself, sometimes breathe, listen to music.<br><br>Q: You're listening to music. Do you ever sing out loud while you're dance?<br><br>A: Yes, ma'am.<br><br>. . .<br><br>Q: Do you recall whether you were hyping yourself up and having this conversation with yourself on the morning that you were at The Breakers?<br><br>A: Yes, ma'am.<br><br>**Ptf.'s Depo. Tr., at 43:20-45:22.**<br><br>Q: Do you recall what you were doing on the ocean lawn just before The Breakers security approached you on the morning of November 13?<br><br>A: Warming up to read on line.<br><br>Q: What do you mean by warming up?<br><br>A: Maybe dancing, talking positive to myself.<br><br>**Ptf.'s Depo. Tr., at 54:22-55:2.**<br><br>Q: You say that while you were staying at The Breakers you were sitting on a grass turf area filming yourself reading while you were approached by a security guard. Is that true?<br><br>A: No, I don't think so.<br><br>**Ptf.'s Depo. Tr., at 99:4–8.**<br><br>Admit that You were not reading any book at the time You were first approached by a security guard during the Ocean Lawn Incident. |

5

| | RESPONSE: Denied, as phrased. At the time Petitioner was first approached by a security guard during the Ocean Lawn Incident, he was performing a physical "warm-up" prior to reading his book.<br><br>**Ptf.'s Resp. to Req. for Admission No. 1.** |
|---|---|
| "[T]he assertion that [Plaintiff] had been disturbing guests was fabricated and false."<br><br>**Am. Compl. [D.E. 20] ¶ 17.** | Q: … [Y]ou said, "I did not cause any disturbance or violate any policy of the hotel." Is that true?<br><br>A: Yes, ma'am.<br><br>Q: When you were screaming profanities into your camera, you don't think that's a disturbance?<br><br>A: Yes, ma'am.<br><br>Q: I'm sorry, was that a yes, you do think it was a disturbance?<br><br>A: Yes.<br><br>**Ptf.'s Depo. Tr., at 99:21–100:5.** |
| "As this conversation was progressing other staff personnel approached, and at the invitation and direction of Defendant Breakers' employee, Defendant O'Dea, four armed officers of the Palm Beach Police Department responded to the scene, and drove their marked police vehicle to the location where Mr. James was standing."<br><br>**Am. Compl. [D.E. 20] ¶ 17.** | Q: Did you tell the security officer you weren't going to answer his questions?<br><br>A: Yes.<br><br>Q: What did you think was going to happen after you told security that you weren't going to answer their questions?<br><br>A: Police were going to be called.<br><br>…<br><br>Q: What happened after the security officer walked away?<br><br>A: The police came.<br><br>**Ptf.'s Depo. Tr., at 62:13–64:25.** |

Plaintiff's allegations in the Amended Complaint [D.E. 20] that form the factual basis of all his causes of action are manifestly untrue and, thus, objectively frivolous. Specifically, Plaintiff

6

admitted under oath that (1) Plaintiff was not reading when he was approached by The Breakers' security guard, (2) Plaintiff was causing a disturbance and screaming profanities into his camera before he was trespassed and removed from The Breakers' property, and (3) Plaintiff was not cooperating with The Breakers' security or the Palm Beach Police officers and refusing to answer their questions.

Further, Plaintiff alleges that, as a result of The Breakers' actions he was unable to participate in the 16th Annual Ann Norton Sculpture Gardens' Literacy Day on November 14, 2023—Plaintiff's stated purpose for coming to Palm Beach—and that The Breakers "disrupted and interfered with Plaintiff's participation as a guest speaker for the Barbara Bush Foundation." Am. Compl. [D.E. 20] ¶¶ 14–15, 26. However, Plaintiff posted a TikTok video[4] of his participation in the Literacy Day event, and he admitted under oath that he spoke to a reporter at the Literacy Day event. Ptf.'s Depo. Tr., at 97:3–11. Thus, not only did Plaintiff attend the Literacy Day event and fulfil his obligations to the Barbara Bush Foundation, Plaintiff also used the event to promote his TikTok profile and expand his public persona—Plaintiff's primary means of generating personal income. Ptf.'s Depo. Tr., at 13:6–10, 15:12–23.

In addition, the Amended Complaint [D.E. 20] itself contains many internal contradictions. For example, Plaintiff alleges he "was to have been a guest speaker at The Breakers, and was scheduled to receive an award for his achievements," but also alleges the event was actually the "Ann Norton Sculpture Gardens' Literacy Day" hosted by the Barbara Bush Foundation. Am. Compl. [D.E. 20] ¶ 14. However, the Ann Norton Sculpture Garden is not on The Breakers' property.

---

[4] Plaintiff's TikTok video can be found at the following link: https://www.tiktok.com/@oliverspeaks1/video/7301488828097973550. Plaintiff also produced video footage from the event in discovery during the DOAH proceeding.

Finally, to the extent that Plaintiff attempts to further mischaracterize the incident, all of Plaintiff's actions were recorded by The Breakers' security footage and Plaintiff's own TikTok LIVE video.

Plaintiff, and Plaintiff's counsel, were both aware of the manifest falsity of Plaintiff's allegations in this case at the time Plaintiff filed the Amended Complaint [D.E. 20]. Each of Plaintiff's sworn admissions—which contradict Plaintiff's fundamental allegations in this case— were made prior to initiating this lawsuit. Specifically, Plaintiff made his sworn admissions in the Florida DOAH proceedings on August 28, 2024, and Plaintiff was deposed on October 24, 2024. Both sources of sworn testimony were within Plaintiff's, and Plaintiff's counsel's, knowledge at the time Plaintiff initiated this action on January 3, 2025, and at the time Plaintiff filed the Amended Complaint [D.E. 20] on April 8, 2025.

Furthermore, the Amended Complaint [D.E. 20] was filed after Defendants' first Motion for Sanctions, in which Defendants identified for Plaintiff <u>each false allegation and referenced Plaintiff's contradictory sworn statements</u>. Thus, the Amended Complaint is the second pleading in this case in which Plaintiff made his patently false allegations. The false allegations from the Amended Complaint identified in this section are especially egregious considering they are the same allegations subject to the first Motion for Sanctions.

Plaintiff's continued use of false allegations demonstrates his indifference and disrespect to the orderly judicial process. Accordingly, sanctions are warranted against Plaintiff and Plaintiff's counsel under Rule 11(b)(3) because Plaintiff's contentions do not have evidentiary support, nor will Plaintiff's contentions have evidentiary support after an opportunity for further investigation or discovery.

**B. When amending the complaint, Plaintiff introduced additional patently false allegations that contradict Plaintiff's sworn statements.**

On March 7, 2025, Defendants served their first Motion for Sanctions on Plaintiff, identifying the patently false allegations contained within his Complaint. In response to the first Motion for Sanctions, and in response to Defendants' Motion to Dismiss, Plaintiff took the opportunity to amend his Complaint as of right. However, rather than removing his patently false allegations, Plaintiff included <u>new</u> false allegations, which he manufactured in an obvious attempt to address fatal defects in his original Complaint.

Specifically, in the Amended Complaint [D.E. 20], Plaintiff introduced allegations that "The Hotel employee at the scene of Mr. James' apprehension, Defendant O'Dea, knew and had confirmed through Hotel records that Plaintiff was both a registered guest and a scheduled guest speaker for the Barbara Bush Foundation event. She did not disclose that information to the police officers and only informed them that Mr. James was disturbing other guests . . . Despite verifying this information, and after consulting with her supervisors, O'Dea directed the officers to evict Plaintiff." Am. Compl. [D.E. 20], at ¶ 19. These allegations are critical to Plaintiff's claims because no Defendant can be liable under § 1981 for removing a person who is unknown to be seeking services. *See* Motion to Dismiss [D.E. 12], at 7–9.

However, based on Plaintiff's prior sworn statements, <u>nobody knew who Plaintiff was at the time he was trespassed and asked to leave The Breakers' property</u>. In fact, Plaintiff admitted under oath that each time he was asked who he was, Plaintiff refused to identify himself as a guest of The Breakers. Ptf.'s Depo. Tr., at 56:13–58:1 (Plaintiff did not tell The Breakers' security guard he was a guest at the hotel), 71:1–18 (Plaintiff did not tell the police he was a guest at the hotel until after he was told to leave), 72:15–73:11 (The Breakers' front desk employees did not know who Plaintiff was and had to ask for his ID). The first time Plaintiff told anybody that he was a

9

guest at The Breakers Hotel, he had already been asked to leave the property and the Palm Beach Police Officers were escorting Plaintiff off the property. Ptf.'s Depo. Tr., at 71:12–20. This was also confirmed through both Plaintiff's own TikTok live stream footage and the footage from the body cameras worn by the police officers – all of which was exchanged in discovery during the DOAH proceeding.

Furthermore, this new allegation—that O'Dea confirmed through The Breakers' records that Plaintiff was a guest at the hotel prior to his trespass and eviction—directly contradict Plaintiff's earlier allegation that "At the time Defendant O'Dea ordered Plaintiff to be ejected from the Hotel she was unaware of the fact that Mr. James was a registered guest at the hotel." Compl. [D.E. 1], at ¶ 60. It is clear that Plaintiff is merely making up his allegations to suit his purposes, knowing that he will be unable to prove those allegations.

Therefore, Plaintiff's new allegation that Defendant O'Dea had "confirmed through Hotel records" that Plaintiff was a guest at the hotel prior to directing the officers to evict him from The Breakers' property is a complete fabrication that is contradicted by Plaintiff's prior sworn testimony and the video footage of the event. Accordingly, Plaintiff's allegation does not have evidentiary support, nor will it have evidentiary support after an opportunity for further investigation or discovery, so sanctions are warranted against Plaintiff and Plaintiff's counsel under Rule 11(b)(3).

**C. There is absolutely no legal basis to sue Paul Leone under § 1981.**

In his Amended Complaint, Plaintiff rightfully dismissed his fabricated cause of action against The Breakers' CEO, Paul Leone, for "Attempted Concealment and Cover Up." However, Plaintiff also *added* Mr. Leone as a defendant in his § 1981 claim on essentially the same grounds – an (unsupported) allegation that Mr. Leone was involved in an attempted cover up of the incident.

10

Plaintiff's claim against Mr. Leone under § 1981 is wholly without any basis in law and was made for the sole purpose of harassing Mr. Leone and The Breakers.

Specifically, Plaintiff admits that Mr. Leone was **not present** during the initial incident (in fact, Mr. Leone was in a different country at the time Plaintiff was trespassed and removed from The Breakers' property). Am. Compl. ¶ 27. Plaintiff also alleges that the only reason Mr. Leone became aware of the incident was because he "reviewed security footage and staff statements **post-incident**." Am. Compl. ¶ 28 (emphasis added).

Under governing law, Plaintiff's allegations plainly preclude his claim against Mr. Leone. "Because liability is premised upon intentional discrimination, personal involvement of a defendant is essential." *Cason Ent., Inc. v. Metropolitan Dade Cnty.*, 20 F. Supp. 2d 1331, 1337 (S.D. Fla. 1998) (citing *Jett v. Dall. Ind. Sch. Dist.*, 491 U.S. 701 (1989)); *see Malone v. Mr. Glass Doors & Windows Mfg., LLC*, No. 21-cv-24263, 2022 WL 3159876, at *11–*12 (S.D. Fla. July 15, 2022). Mere knowledge of the alleged discriminatory act and failure to remedy the act cannot form the basis for liability under § 1981. *Malone*, 2022 WL 3159876, at *11–*12. Thus, because Mr. Leone only learned of the incident after it had already happened, Mr. Leone could not have been "personally involved" in Plaintiff's trespass or removal from The Breakers' property.

Accordingly, there is no basis in law to include Mr. Leone as a defendant in this case. Rather, Plaintiff makes a claim against Mr. Leone for the sole purpose of harassing him and The Breakers, distracting The Breakers' CEO from running the business, and manipulating the federal court system. Plaintiff sues Mr. Leone in his personal capacity, despite <u>Plaintiff's admission that Mr. Leone is not involved in this dispute in any material way</u>. Accordingly, Plaintiff's claim against Mr. Leone under § 1981 is not supported by any interpretation of the law and was brought for an improper purpose, and sanctions are warranted under Rule 11(b)(1) and (b)(2).

## CONCLUSION

For all the above-stated reasons, the Court should grant this Motion and impose sanctions against Plaintiff and his attorney under Rule 11.

WHEREFORE, Defendants request an order imposing sanctions against Plaintiff, Oliver James, and Plaintiff's counsel, Ronald Weil, and granting Defendant an award of reasonable expenses, including attorneys' fees, incurred for this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served, via email, on Plaintiff's counsel identified on the following Service List, and that the same will not be filed or presented to the Court until at least 21 days thereafter.

Date: December 15, 2025

Respectfully submitted,

**GUNSTER, YOAKLEY & STEWART, P.A.**
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
(561) 655-1980

/s/ *Holly Griffin Goodman*
**Gregor J. Schwinghammer, Esq.**
Florida Bar No. 90158
gschwinghammer@gunster.com
jfirogenis@gunster.com
eservice@gunster.com
**Holly Griffin Goodman, Esq.**
Florida Bar No. 93213
hgoodman@gunster.com
kdaugharty@gunster.com
**Ryan C. Childress, Esq.**
Florida Bar No. 1049623
rchildress@gunster.com
mmargolese@gunster.com
*Attorneys for Defendants*

SERVICE LIST

**WEIL LAW FIRM, P.A.**
201 South Biscayne Boulevard
Citigroup Center, 27th Floor
Miami, FL 33131
(305) 372-5352
**Ronald Weil**
rweil@weillawfirm.net
service@weillawfirm.net

*Attorney for Plaintiff*

### CERTIFICATE OF CONFERRAL

Undersigned counsel incorporates the above Certificate of Service as demonstrating its effort to confer with Plaintiff in a good faith effort to resolve the issues raised in this Motion prior to filing. Plaintiff did not withdraw or otherwise modify any portion of the Amended Complaint following his receipt of the safe harbor notice and this proposed motion.

/s/ *Holly Griffin Goodman*
Holly Griffin Goodman