EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:25-cv-80014-AMC-RMM

OLIVER JAMES,

    Plaintiff,

v.

FLAGLER SYSTEM, INC., a Florida corporation, THE BREAKERS PALM BEACH, INC. d/b/a THE BREAKERS HOTEL, a Florida corporation, CORRIE O'DEA, an individual, ARTHUR BIRMELIN, an individual, GINO SILVESTRE, an individual, and PAUL N. LEONE, an individual,

    Defendants.

_____/

## MOTION FOR SANCTIONS

Defendants, FLAGLER SYSTEM, INC., THE BREAKERS PALM BEACH, INC., CORRIE O'DEA, ARTHUR BIRMELIN, GINO SILVESTRI[1], and PAUL N. LEONE (collectively, "Defendants"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, request an order imposing sanctions against Plaintiff, OLIVER JAMES, and Plaintiff's counsel, Ronald Weil, and granting an award of reasonable expenses, including attorney's fees, incurred for this Motion, and in support states:

### INTRODUCTION

This action is the third forum in which Plaintiff has raised claims of discrimination arising out of the same incident—his trespass and removal from The Breakers' property because of his disruptive behavior, refusals to answer reasonable questions posed by The Breakers security and

---

[1] Mr. Silvestri's name is misspelled in the case caption.

local police, and violation of The Breakers' rules. First, Plaintiff filed a complaint with the Florida Commission on Human Relations ("FCHR") and received a "no cause" finding—i.e., that "it is unlikely that unlawful discrimination occurred in this matter." Second, Plaintiff appealed the FCHR's determination via a petition to the Florida Department of Administrative Hearings ("DOAH"). After engaging in extensive discovery and making many admissions of fact that were harmful to his case, Plaintiff voluntarily dismissed his petition days before his final hearing.

Thus, despite this federal action being in early stages, the facts are well-known to Plaintiff and his counsel. Plaintiff has taken discovery from The Breakers and its employees, including witness depositions, and Plaintiff has made many sworn statements in the form of admissions, answers to interrogatories, and deposition testimony.

Yet, Plaintiff's Complaint is full of allegations that are patently false and directly contradict his sworn statements and other public statements, including Plaintiff's posts on TikTok. The falsity of Plaintiff's allegations was known to Plaintiff, and his attorney, at the time that the Complaint in this action was filed. Furthermore, Plaintiff raises a cause of action under the Florida Civil Rights Act that is directly contrary to existing law. Finally, Plaintiff attempts to bring a legally untenable, and completely fabricated, cause of action against The Breakers' Chief Executive Officer, Mr. Leone, for no reason other than to harass both Mr. Leone and The Breakers. Accordingly, sanctions against Plaintiff and his attorney are warranted under Rule 11.

## ARGUMENT

Rule 11 imposes an obligation on attorneys to certify that, before presenting the Court with any pleading, the attorney has both (1) conducted a reasonable inquiry, and (2) determined that the document is well-grounded in fact, legally tenable, and not presented for an improper purpose. *See* Fed. R. Civ. P. 11(b). The Court uses an objective standard for testing conduct under Rule 11. First, the Court must determine whether a party's claims were "objectively frivolous" resulting from the

party's "deliberate indifference to obvious facts" or "when the plain language of an applicable statute ... preclude relief." *See Baker v. Alederman*, 158 F.3d 516, 524 (11th Cir. 1998). Then, the Court must determine whether the person who signed the pleadings should have been aware that they were frivolous. *Id.*

Here, all of Plaintiff's claims are frivolous under Rule 11. First, all of Plaintiff's claims are grounded on false allegations that directly contradict Plaintiff's sworn statements. Further, Plaintiff's cause of action under the Florida Civil Rights Act is facially barred by the plain language of the statute. Finally, Plaintiff's purported claim against Mr. Leone is not legally cognizable and is presented for an improper purpose—to harass Mr. Leone and The Breakers. Accordingly, Plaintiff's Complaint does not comply with Rule 11, and sanctions are warranted.

### A. Plaintiff's claims are based on patently false allegations that contradict Plaintiff's sworn statements.

Plaintiff's Complaint solely relies on his (false) allegations that The Breakers, and its employees, discriminated against Plaintiff based on his race.[2] Specifically, Plaintiff claims that he was singled out based on his race for removal from The Breakers' property. He claims that he was reading a book on The Breakers' Ocean Lawn when he was approached by a security officer employed by The Breakers. Compl. [D.E. 1] ¶¶ 15–16. The Breakers' security officer told Plaintiff that he was violating The Breakers' rule against using professional photography equipment and that he was disturbing other guests of the hotel based on Plaintiff's loud noises and yelling. Plaintiff claims he was not given any warning or opportunity to follow the rules or fix his behavior before he was removed from The Breakers' property. Compl. [D.E. 1] ¶ 16. Plaintiff further claims that he was not disturbing other guests, and that his removal was motivated by racial profiling, and The

---

[2] Although Plaintiff raises eight separate causes of action against the six Defendants, his allegations all arise from the same interaction during which he claims Defendants discriminated against him on the basis of his race (allegations which are untrue and which Defendants expressly deny).

3

Breakers' stated rationale for removing Plaintiff from its property is pretext for discrimination. Compl. [D.E. 1] ¶ 17, 19. Plaintiff claims that, because of his removal from The Breakers, he was unable to attend and speak at the "Literacy Day" event hosted by the Barbara Bush Foundation—which was the purpose of his trip to Palm Beach. Compl. [D.E. 1] ¶ 14–15.

Based on Plaintiff's own admissions, each of these key allegations are false. They are directly contradicted by Plaintiff's sworn testimony from his earlier complaint, including his deposition on October 24, 2024 and his Responses to The Breakers' Requests for Admissions on August 28, 2024.[3] The contradictions are clear when compared in the chart, below:

| Plaintiff's Allegation | Plaintiff's Sworn Testimony |
|---|---|
| "[Plaintiff] was standing by himself on an expanse of the Hotel's lawn denominated 'The Ocean Lawn' with his camera phone mounted on a small tripod. He was rehearsing, reading from a book entitled, '101 Essays That Will Change the Way You Think.'"<br><br>Compl. [D.E. 1] ¶ 15. | Q: So you get to this lawn area and you decide this is where you plan to film. Walk me through your process when you're getting ready to livestream. How do you set yourself up?<br><br>A: Usually with some type of movement, maybe dancing, working out, any type of movement.<br><br>**Ptf.'s Depo. Tr., at 43:11-16**<br><br>Q: Do you ever get nervous reading on camera?<br><br>A: Yes, ma'am.<br><br>Q: Do you do anything to get yourself in the right head space or hype yourself up?<br><br>A: Yes, ma'am.<br><br>Q: What do you do to hype yourself up?<br><br>A: Dance, exercise, talk to myself, sometimes breathe, listen to music.<br><br>Q: You're listening to music. Do you ever sing out loud while you're dance? |

---

[3] A copy of the relevant excerpts of Plaintiff's deposition transcript is attached as **Exhibit 1**, and a copy of Plaintiff's sworn Admissions is attached as **Exhibit 2**.

4

| | |
|---|---|
| | A: Yes, ma'am.<br><br>. . .<br><br>Q: Do you recall whether you were hyping yourself up and having this conversation with yourself on the morning that you were at The Breakers?<br><br>A: Yes, ma'am.<br><br>**Ptf.'s Depo. Tr., at 43:20-45:22.**<br><br>Q: Do you recall what you were doing on the ocean lawn just before The Breakers security approached you on the morning of November 13?<br><br>A: Warming up to read on line.<br><br>Q: What do you mean by warming up?<br><br>A: Maybe dancing, talking positive to myself.<br><br>**Ptf.'s Depo. Tr., at 54:22-55:2**<br><br>Q: You say that while you were staying at The Breakers you were sitting on a grass turf area filming yourself reading while you were approached by a security guard. Is that true?<br><br>A: No, I don't think so.<br><br>**Ptf.'s Depo. Tr., at 99:4–8.**<br><br>Admit that You were not reading any book at the time You were first approached by a security guard during the Ocean Lawn Incident.<br><br>RESPONSE: Denied, as phrased. At the time Petitioner was first approached by a security guard during the Ocean Lawn Incident, he was performing a physical "warm-up" prior to reading his book.<br><br>**Ptf.'s Resp. to Req. for Admission No. 1.** |
| "Mr. James was approached by a member of the Hotel staff who said that he was investigating a disturbance to the Hotel's pool area. Mr. James | Q: It says in [Plaintiff's petition], "Before my removal I was not warned or asked to stop filming, to lower my volume or to refrain from any other activity that violated a policy of the hotel." Is that true? |

5

| | |
|---|---|
| informed the employee that he had not been in the pool area. The employee then replied that Mr. James had also violated an unpublished hotel rule prohibiting the use of tripod camera stands. No warning had been given to Plaintiff, and no opportunity to simply desist was offered." <br> **Compl. [D.E. 1] ¶ 16.** | A: I think so. I'm not 100 percent sure. <br><br> Q: You were told that The Breakers doesn't allow tripods, weren't you? <br><br> A: Yes. <br><br> Q: And you kept using your tripod after the security officer told you that? <br><br> A: Yes, ma'am. <br><br> **Ptf.'s Depo. Tr., at 99:9–20.** |
| "[T]he assertion that [Plaintiff] had been disturbing guests was fabricated and false." <br> **Compl. [D.E. 1] ¶ 17.** | Q: … [Y]ou said, "I did not cause any disturbance or violate any policy of the hotel." Is that true? <br><br> A: Yes, ma'am. <br><br> Q: When you were screaming profanities into your camera, you don't think that's a disturbance? <br><br> A: Yes, ma'am. <br><br> Q: I'm sorry, was that a yes, you do think it was a disturbance? <br><br> A: Yes. <br><br> **Ptf.'s Depo. Tr., at 99:21–100:5.** |
| "As this conversation was progressing other staff personnel approached, and at the invitation and direction of Defendant Breakers' employee, Defendant O'Dea, four armed officers of the Palm Beach Police Department responded to the scene, and drove their marked police vehicle to the location where Mr. James was standing." <br> **Compl. [D.E. 1] ¶ 17.** | Q: Did you tell the security officer you weren't going to answer his questions? <br><br> A: Yes. <br><br> Q: What did you think was going to happen after you told security that you weren't going to answer their questions? <br><br> A: Police were going to be called. <br><br> … <br><br> Q: What happened after the security officer walked away? <br><br> A: The police came. |

|  | **Ptf.'s Depo. Tr., at 62:13–64:25.** |
|---|---|

Plaintiff's allegations in the Complaint [D.E. 1] that form the factual basis of all his causes of action are manifestly untrue and, thus, objectively frivolous. Specifically, Plaintiff admitted under oath that (1) Plaintiff was not reading when he was approached by The Breakers' security guard, (2) Plaintiff was causing a disturbance and screaming profanities into his camera before he was trespassed and removed from The Breakers' property, (3) Plaintiff was given an opportunity to put his tripod away to comply with The Breakers' rules, yet he continued to violate the rules before he was trespassed and removed from The Breakers' property, and (4) Plaintiff was not cooperating with The Breakers' security or the Palm Beach Police officers and refusing to answer their questions.

Further, Plaintiff alleges that, as a result of The Breakers' actions he was unable to participate in the 16th Annual Ann Norton Sculpture Gardens' Literacy Day on November 14, 2023—Plaintiff's stated purpose for coming to Palm Beach—and that The Breakers "prevented him from fulfilling his obligation to the Barbara Bush Foundation." Compl. [D.E. 1] ¶¶ 14, 25, 27. However, Plaintiff posted TikTok video[4] of his participation the Literacy Day event, and he admitted under oath that he spoke to a reporter at the Literacy Day event. *See* Ptf.'s Depo. Tr., at 97:3–11. Thus, not only did Plaintiff attend the Literacy Day event and fulfil his obligations to the Barbara Bush Foundation, Plaintiff also used the event to promote his TikTok profile and expand his public persona—Plaintiff's primary means of generating personal income. *See* Ptf.'s Depo. Tr., at 13:6–10, 15:12–23.

In addition, the Complaint itself contains many internal contradictions. First, Plaintiff

---

[4] Plaintiff's TikTok video can be found at the following link: https://www.tiktok.com/@oliverspeaks1/video/7301488828097973550. Plaintiff also produced video footage from the event in discovery during the DOAH proceeding.

7

alleges he "was to have been a guest speaker at The Breakers, and was scheduled to receive an award for his achievements," but also alleges the event was actually the "Ann Norton Sculpture Gardens' Literacy Day" hosted by the Barbara Bush Foundation. *See* Compl. [D.E. 1] ¶ 14. However, the Ann Norton Sculpture Garden is not on The Breakers' property.

Second, Plaintiff alleges that Defendant O'Dea refused to disclose to the local police that Plaintiff was a guest at The Breakers before Plaintiff's trespass and removal from The Breakers' property. Compl. [D.E. 1] ¶ 19. Yet, Plaintiff admits later that "At the time Defendant O'Dea ordered Plaintiff to be ejected from the Hotel she was unaware of the fact that Mr. James was a registered guest at the hotel." Compl. [D.E. 1] ¶ 60. Finally, to the extent that Plaintiff attempts to further mischaracterize the incident, all of Plaintiff's actions were recorded by The Breakers' security footage and Plaintiff's own TikTok LIVE video.

Plaintiff, and Plaintiff's counsel, were both aware of the manifest falsity of Plaintiff's allegations in this case at the time Plaintiff filed the Complaint [D.E. 1]. Each of Plaintiff's sworn admissions—which contradict Plaintiff's fundamental allegations in this case—were made prior to initiating this lawsuit. Specifically, Plaintiff made his sworn admissions in the Florida DOAH proceedings on August 28, 2024, and Plaintiff was deposed on October 24, 2024. Both sources of sworn testimony were within Plaintiff's, and Plaintiff's counsel's, knowledge at the time Plaintiff filed the Complaint [D.E. 1] in this action on January 3, 2025. Accordingly, sanctions are warranted against Plaintiff and Plaintiff's counsel under Rule 11(b)(3) because Plaintiff's contentions do not have evidentiary support, nor will Plaintiff's contentions have evidentiary support after an opportunity for further investigation or discovery.

### B. Plaintiff's claim under the Florida Civil Rights Act is baseless.

In Count VI of the Complaint [D.E. 1], Plaintiff attempts to assert a cause of action, without any cognizable legal basis, for Violation of the Florida Civil Rights Act ("FCRA"). Under Section

760.11, a party is authorized to bring a civil action to enforce the FCRA if the FCHR determines that there is reasonable cause to believe that a discriminatory practice has occurred. *See* § 760.11(4), Fla. Stat. However, if (as in this case) the FCHR determines that there is *not* reasonable cause to believe that a violation of the FCRA occurred, then no civil action is authorized. § 760.11(7).

Plaintiff filed a complaint with the FCHR against The Breakers and the FCHR timely issued a "no cause" finding. *See* **Exhibit 3**. Thus, Plaintiff has no civil cause of action against The Breakers for violation of the FCRA.[5] Although Plaintiff had the right to contest the FCHR's "no cause" finding by requesting an administrative hearing, *see* § 760.11(7), Plaintiff voluntarily dismissed his petition just prior to the scheduled final hearing, barring his claim. *See* § 760.11(7); Notice of Voluntary Dismissal, **Exhibit 4**.

Because the administrative prerequisite to filing a civil action under the FCRA is expressly laid out by statute, Plaintiff can make no plausible legal argument that he may bring a claim under the FCRA. Plaintiff's claim under the FCRA is clearly barred because he failed to exhaust his administrative remedies prior to initiating a civil action. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1205 (11th Cir. 2007). Accordingly, sanctions are warranted against Plaintiff and Plaintiff's counsel under Rule 11(b)(2) because Plaintiff's claim under the FCRA is not warranty by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

### C. There is no cause of action for "Attempted Concealment and Cover Up" and Plaintiff's attempt to plead such was brought for an improper purpose.

At the end of his Complaint, Plaintiff purports to allege a single cause of action against The

---

[5] As for the other Defendants Plaintiff named in his FCRA claim, Plaintiff did not file a complaint against Flagler System, Inc. or against Ms. O'Dea in her individual capacity.

Breakers' CEO, Paul Leone. This cause of action is titled "Attempted Concealment and Cover Up," and represents the only cause of action made against Mr. Leone. However, "Attempted Concealment and Cover Up" is not a cognizable cause of action under any established state or federal law or common law. Rather, Plaintiff manufactured a fake cause of action for the sole purpose of suing Paul Leone in his personal capacity, despite Plaintiff's knowledge that Mr. Leone is not involved in this dispute in any material way. Plaintiff's manufactured cause of action for "Attempted Concealment and Cover Up" is a thinly veiled attempt to harass Mr. Leone and The Breakers, distract The Breakers' CEO, and manipulate the federal court system. Accordingly, Plaintiff's cause of action against Paul Leone for "Attempted Concealment and Cover Up" was brought for an improper purpose, which is prohibited by Rule 11.

## CONCLUSION

For all the above-stated reasons, this Court should grant this Motion and impose sanctions under Rule 11.

WHEREFORE, Defendants request an order imposing sanctions against Plaintiff and Plaintiff's counsel, and granting Defendants an award of reasonable expenses, including attorney's fees, incurred for this Motion.

Date: March 7, 2025

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served, via email, on Plaintiff's counsel identified on the following Service List on March 7, 2025, and that the same will not be filed or be presented to the court until at least 21 days thereafter.

GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
(561) 655-1980

*/s/ Holly Griffin Goodwin*
**Gregor J. Schwinghammer, Esq.**
Fla. Bar No. 90158
gschwinghammer@gunster.com
jfirogenis@gunster.com
eservice@gunster.com
**Holly Griffin Goodman, Esq.**
Fla. Bar No. 93213
hgoodman@gunster.com
cstgeorge@gunster.com
**Ryan C. Childress, Esq.**
Fla. Bar No. 1049623
rchildress@gunster.com
kdaugharty@gunster.com

*Attorneys for Defendants*

## SERVICE LIST

**Ronald Weil**
ronald@weillawfirm.net
service@weillawfirm.net
**WEIL LAW FIRM, P.A.**
201 South Biscayne Boulevard
Citigroup Center, 27th Floor
Miami, FL 33131
(305) 372-5352

11