UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-80014-Cannon/McCabe

OLIVER JAMES,

     Plaintiff,

v.

FLAGLER SYSTEM, INC., a
Florida corporation, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court on Defendants' Second Motion for Sanctions, which was referred to the undersigned by United States District Judge Aileen M. Cannon.  (DE 51, DE 52).  For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED IN PART** and that Plaintiff's counsel be ordered to pay $1,000 into the court registry. The Court also sua sponte recommends that Plaintiff's counsel be referred, based on his deposition conduct, to the Southern District of Florida's Committee on Attorney Admissions, Peer Review, and Attorney Grievance for appropriate investigation and recommendation.

## I.     BACKGROUND

Plaintiff is a black man and social media influencer who developed a social media following for his work as a child literacy advocate.  (DE 20 ¶¶ 12-13).  In November 2023, the Barbara Bush Foundation invited Plaintiff to stay at The Breakers Hotel to serve as a guest speaker at a child literacy event.  (DE 20 ¶ 14).  On the morning of November 13, 2023, Plaintiff was standing on a large ocean-side lawn at the hotel when hotel security and Palm Beach Police

removed him from the grounds and escorted him off the property. Many of the events that morning were captured on the following videos:

    (1)    Body camera footage from Officer Rothenberg ("Rothenberg Video")

    (2)    Body camera footage from Officer Burgoon starting at 9:36 ("Burgoon Video 1")

    (3)    Body camera footage from Officer Burgoon starting at 9:53 ("Burgoon Video 2")

    (4)    Body camera footage from Officer Ostrander ("Ostrander Video")

    (5)    Rooftop camera footage from the hotel ("Rooftop Video")

    (6)    Plaintiff's live TikTok footage ("TikTok Video")

(DE 64-1 through DE 64-6).

The Court has reviewed all of the above videos as well as Plaintiff's deposition. (DE 69-1). After Plaintiff's removal from the property, the following litigation ensued.

**A.    Administrative Litigation**

First, Plaintiff filed a complaint with the Florida Commission on Human Relations ("FCHR"), alleging that the hotel discriminated against him based on his race. Defendants represent, and Plaintiff does not contest, that the FCHR issued a "no cause" finding, concluding that it was "unlikely that unlawful discrimination occurred in this matter." (DE 51 at 1).

Next, Plaintiff appealed the no-cause finding to the Florida Division of Administrative Hearings ("DOAH"). As part of the DOAH proceedings, the parties engaged in extensive discovery, including document requests, interrogatories, requests for admissions, and at least one deposition. The parties also exchanged the video recordings identified above. (DE 62). Defendants represent, and Plaintiff does not contest, that Plaintiff voluntarily dismissed his DOAH petition days before the final hearing took place. (DE 51 at 2).

**B.       This Lawsuit**

Plaintiff next filed suit in federal court.  On January 3, 2025, Plaintiff filed his initial

Complaint as follows.

| Count | Cause of Action | Defendants |
|---|---|---|
| 1 | Discriminatory interference with contractual relations in violation of 42 U.S.C. § 1981 | Flagler System, Inc.  ("Flagler System"); The Breakers, Palm Beach, Inc. ("The Breakers"); and Corrie O'Dea, a hotel employee |
| 2 | Intentional Infliction of Emotional Distress | Flagler System; The Breakers; and O'Dea |
| 3 | Negligent Hire | Flagler System; and The Breakers |
| 4 | Negligent Supervision and Retention | Flagler System; and The Breakers |
| 5 | Conspiracy to Deny Civil Rights | O'Dea; Arthur Birmelin, a hotel employee; and Gino Silvestre, a hotel employee |
| 6 | Discrimination under Florida Civil Rights Act of 1992 | Flagler System; The Breakers; and O'Dea |
| 7 | Attempted Cover Up and Concealment | Paul Leone, a hotel employee |

(DE 1)

On March 7, 2025, Defendants served, but did not file, a motion for sanctions pursuant to

Rule 11 of the Federal Rules of Civil Procedure.  (DE 51-1).  The motion challenged Plaintiff's

claims as both legally frivolous and factually unsupported.  (DE 51-1).  Thereafter, Plaintiff filed

an Amended Complaint that altered certain factual allegations and narrowed the legal claims as

follows:

3

| Count | Cause of Action | Defendants |
|-------|-----------------|------------|
| 1 | Discriminatory interference with contractual relations in violation of 42 U.S.C. § 1981 | Flagler System; The Breakers; O'Dea; and Leone |
| 2 | Negligent Hire | Flagler System; and The Breakers |
| 3 | Negligent Supervision | Flagler System; and The Breakers |
| 4 | Negligent Retention | Flagler System; and The Breakers |

(DE 20)

On April 30, 2025, Defendants responded by serving, but not filing, a second Rule 11 motion for sanctions. (DE 54-1). Like the first motion, the second motion challenged Plaintiff's claims as both legally frivolous and factually unsupported. (DE 54-1). In response, Plaintiff took no steps to cure any of the deficiencies identified in the second motion for sanctions. The parties thereafter continued to litigate the case.

**C.    The Order of Dismissal**

On December 8, 2025, the District Judge dismissed the Amended Complaint with prejudice. (DE 49). As to the § 1981 claim alleged in Count 1, the District Judge found that Plaintiff failed to allege facts to support a plausible inference of racially discriminatory intent. (DE 49 at 10). As to the § 1981 claim against Defendant Leone in his individual capacity, the District Judge also found that Plaintiff failed to allege facts to show "personal involvement" of the type required to state a claim for individual liability. (DE 49 at 8-9). As to the common law claims alleged in Counts 2, 3, and 4, the District Judge found that Plaintiff failed to allege facts to show

Defendants knew or should have known that the employee in question was unsuitable/unfit for the job.  (DE 49 at 11-12).

Following the dismissal with prejudice, Defendants filed the instant motion.  (DE 51).

## II.   **COMPLIANCE WITH LOCAL RULE 7.1(a)(3)**

Before reaching the merits, the Court addresses Plaintiff's procedural argument concerning the meet-and-confer requirement of Local Rule 7.1(a)(3), which provides as follows:

> Prior to filing any motion in a civil case, except [list of excepted motions], counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion.  …  At the end of the motion, and above the signature block, counsel for the moving party shall certify either: (A) that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so; or (B) that counsel for the movant has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion, which efforts shall be identified with specificity in the statement (including the date, time, and manner of each effort), but has been unable to do so.  …

*See* S.D. Fla. L.R. 7.1(a)(3).  As Plaintiff points out, Rule 11 motions do not fall within the list of motions excepted from the rule.  Plaintiff contends that Defendants failed to meet and confer prior to filing the instant motion.  (DE 53 at 3).  In support, Plaintiff cites *Harris v. Virage Capital Mgmt. LP*, No. 23-cv-23803, 2024 WL 2797400, at *6 (S.D. Fla. Mar. 27, 2024), where Magistrate Judge Torres denied a Rule 11 motion based on inadequate compliance with Local Rule 7.1(a)(3), even though the moving party had complied with the safe harbor provisions of Rule 11(c) by serving the motion at least 21 days before filing it, thereby allowing the nonmoving party an opportunity to withdraw the offensive pleading.

The Court has reviewed Defendants' Certificate of Conferral and finds it confusing.  The Certificate of Conferral incorporates the Certificate of Service as supposedly demonstrating an effort to meet and confer.  (DE 51 at 13).  The Certificate of Service, in turn, claims to have effected

service of the motion on December 15, 2025, but confusingly states that the motion "will not be filed or presented to the Court until at least 21 days thereafter" (thereafter than what is not clear). (DE 51 at 12). The Court assumes defense counsel neglected to update their Certificate of Service after the safe harbor period expired. As a result, the operative Certificate of Conferral and Certificate of Service do not accurately explain when, if ever, Defendants complied with the safe harbor provision or otherwise attempted to meet and confer.

In their reply, defense counsel attached a letter to opposing counsel dated April 30, 2025. (DE 54-1). The letter purported to attach a copy of the instant motion for sanctions, and it demanded that opposing counsel withdraw the Amended Complaint and dismiss the lawsuit within 21 days. (DE 54-1). Based on this letter, the Court assumes that defense counsel served the instant motion on April 30, 2025 as part of the safe harbor process and thereafter filed (and re-served) the motion on December 15, 2025. To the extent the current Certificate of Conferral and Certificate of Service do not accurately explain this timeline, the Court excuses these errors.

As to the substance of the meet-and-confer, the Court finds that Defendants adequately complied with Local Rule 7.1(a)(3) by sending the Rule 11 motion and letter to opposing counsel on April 30, 2025, thereby warning that the instant motion would be filed absent efforts to withdraw or cure the Amended Complaint. The local rule allows conferral to take place "orally or in writing." *See* S.D. Fla. L.R. 7.1(a)(3). In the Court's view, the local rule did not require defense counsel, having been rebuffed during the safe harbor period, to reach out a second time to opposing counsel to redetermine his position before filing the instant motion.

The Court has reviewed *Harris* but finds it distinguishable. In *Harris*, the court expressed concern that the Certificate of Service in that case materially misrepresented the conferral process. 2024 WL 2797400, at *7. The Court felt "hard pressed" to grant a motion for sanctions based on noncompliance with court rules while at the same time ignoring the moving party's own violations.

*Id.* at *7.  Also, in *Harris*, the moving party fulfilled the bare minimum requirements of Rule 11 by serving a copy of the sanctions motion at the outset of the safe harbor period.  *Id.* at *5-7.  Here, Defendants went beyond the bare minimum by serving both the sanctions motion and a letter requesting withdrawal of the Amended Complaint.  (DE 54-1).  This fact makes *Harris* distinguishable.  For all of these reasons, the Court declines to deny this motion based on noncompliance with Local Rule 7.1(a)(3).

## III.   **DISCUSSION**

As to the merits of the motion, Rule 11 provides as follows, in relevant part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper-whether by signing, filing, submitting, or later advocating it-an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

The purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers."  *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (cleaned up).  Rule 11 sanctions may be imposed in three scenarios:  (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable

argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993). Rule 11 sanctions can also be imposed where the claims are objectively frivolous in view of the facts or the law. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

The Supreme Court has cautioned that Rule 11 "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). As such, courts should resolve all doubts in favor of the signer of the pleading. *See Thompson v. SendTec, Inc.*, No. 06-cv-61327, 2007 WL 9700595, at *1 (S.D. Fla. Nov. 20, 2007) (citing *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).

Here, Defendants challenge the § 1981 claim against Defendant Leone as legally frivolous and the § 1981 claim against all Defendants as factually unsupported. The Court will address each argument in turn.

**A.      The § 1981 Claim Against Defendant Leone**

The Amended Complaint alleged a § 1981 claim against Defendant Leone in his individual capacity. (DE 20 at 7-9). During the motion-to-dismiss briefing, all parties agreed that individual liability cannot be imposed under § 1981 absent "personal involvement" by the individual defendant. (DE 24 at 7, citing *Malone v. Mr. Glass Doors & Windows Mfg., LLC*, No. 21-cv-24263, 2022 WL 3159876, at *11–12 (S.D. Fla. July 15, 2022)) (DE 25 at 9, citing *Cason Enters, Inc. v. Metropolitan Dade Cnty.*, 20 F. Supp. 2d 1331, 1337 (S.D. Fla. 1998)).

Plaintiff argued that "personal involvement" should include the type of conduct alleged against Leone, namely, post-incident cover-up of the alleged discrimination by way of a false and fraudulent press release issued to the public. (DE 25 at 9). Defendants argued the opposite, namely, that "personal involvement" must include involvement in the alleged discriminatory incident itself, i.e., ejection from the hotel, and should not be interpreted to include post-incident

cover-up activity. (DE 24 at 7-8, DE 26 at 6-7). Neither side pointed the District Judge to any controlling cases that addressed the precise issue at hand, namely, whether "personal involvement" includes post-incident cover-up activity. In the end, the District Judge sided with Defendants' view. (DE 49).

Defendants now seek sanctions, arguing that the § 1981 claim against Defendant Leone was frivolous from the outset. (DE 51 at 11). The Court disagrees. In the Court's view, Plaintiff had a good faith basis to argue that "personal involvement" under § 1981 includes cover-up activity. Defendants cited no controlling authority to foreclose this argument. Lawyers should not be sanctioned for raising novel legal arguments, especially issues of first impression. *See Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (noting that "the purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression") (cleaned up); *Laborers Loc. 938 Joint Health & Welfare Tr. Fund v. B.R. Starnes Co. of Fla.*, 827 F.2d 1454, 1458 (11th Cir. 1987) (affirming denial of Rule 11 motion because the issues were "fairly debatable" and "[t]here was no clear binding precedent on the issue"). In short, no sanctions should be issued on these grounds.

## B.     Unsupported Factual Allegations

Defendants next attack several of the factual allegations that supported the § 1981 claim alleged in Count 1 of the Amended Complaint. (DE 51 at 4-6). By signing a pleading or other paper, a lawyer represents that "factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). "Sanctions are warranted when a party exhibits a deliberate indifference to obvious facts, but not when the party's evidence to support a claim is merely weak." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (cleaned up).

Here, Defendants argue that the entire factual premise of Count 1, i.e., that Defendants removed Plaintiff from the hotel based on his race, is false.  (DE 51 at 4).  In support, Defendants claim that each of Plaintiff's key factual allegations is false.  (DE 51 at 4).  The Court will address each key allegation in turn, following the same order set forth in Defendants' motion.

### 1.   Was Plaintiff reading from a book when security approached him?

Defendants first point to two sentences from paragraph 15 of the Amended Complaint, which Defendants quote as follows:

> Mr. James was standing by himself on an expanse of the Hotel's lawn denominated "The Ocean Lawn" with his camera phone mounted on a small tripod.  He was rehearsing, *reading from a book* entitled, "101 Essays That Will Change the Way You Think." Am. Compl. [D.E. 20] ¶ 15.

(DE 51 at 4) (emphasis added).  Defendants' quote is not accurate.  In reality, the relevant portion of paragraph 15 alleges as follows:

> He was standing by himself on an expanse of the Hotel's lawn denominated "The Ocean Lawn" with his camera phone mounted on a small tripod.  He was *preparing to read a book* entitled, "101 Essays That Will Change the Way You Think."

(DE 20 ¶ 15) (emphasis added).

The difference between "reading" and "preparing to read" seems to be important as Defendants devote nearly two pages of their motion to a list of evidence that Plaintiff was not *actually reading* from a book at the time hotel security approached him.  (DE 51 at 4-7).  Instead, he was performing warm-up exercises, listening to music, and "maybe dancing."  (DE 51 at 4-5).  Defendants urge the Court to sanction Plaintiff because he admitted under oath that, contrary to his Amended Complaint, he "was not reading when he was approached by the [hotel] security guard."  (DE 51 at 7).

The whole point is irrelevant because the Amended Complaint never made that allegation.  Instead, paragraph 15 alleged that Plaintiff was "preparing to read."  (DE 20 ¶ 15).  At deposition,

Plaintiff described his preparation as performing warm-up exercises, self-talk, and the other activities listed at pages 4 through 7 of Defendants' motion. (DE 69-1 at 48:9-18, 49:11-14, 55:1-2). Paragraph 16 further explained that Plaintiff was rehearsing at the exact moment hotel security approached him. (DE 20 ¶ 16) ("As he continued to rehearse, Mr. James was approached by a member of the Hotel staff….").

In short, the Amended Complaint never alleged, as Defendants argue, that Plaintiff was merely reading a book when hotel security approached him. The Court declines to recommend sanctions for an allegation that was never made. Moreover, the Court is concerned that Defendants – in an effort to have Rule 11 sanctions imposed on their adversaries – made a misrepresentation of their own by misquoting the content of the Amended Complaint to the Court. The Court assumes the error was inadvertent and resulted from a cut-and-paste error from Defendants' earlier motion for sanctions.

### 2. Did Plaintiff disturb other hotel guests?

Defendants next point to the second clause of the final sentence of paragraph 17 of the Amended Complaint, which alleges as follows:

> "[T]he assertion that [Plaintiff] had been disturbing guests was fabricated and false. Am. Compl. [D.E. 20] ¶ 17."

(DE 51 at 6). To demonstrate the falsity of this allegation, Defendants cite to a portion of Plaintiff's deposition testimony that proceeded as follows:

Q:      … [Y]ou said, "I did not cause any disturbance or violate any policy of the hotel." Is that true?

A:      Yes, ma'am.

Q:      When you were screaming profanities into your camera, you don't think that's a disturbance?

A:      Yes, ma'am.

Q:      I'm sorry, was that a yes, you do think it was a disturbance?

A:      Yes.

(DE 69-1 at 99:21–100:1-5).

By citing this portion of the deposition, Defendants seem to imply that Plaintiff admitted he was disturbing guests by screaming profanities into his camera, thereby giving hotel security a reasonable basis to approach him on the hotel lawn.  The Court finds this argument unavailing. The record shows that the hotel security guard approached Plaintiff and spoke to him at 0:00 to 1:55 of the TikTok Video.  (DE 64-6, TikTok Video).  The guard claimed to have received a call regarding a disturbance at the pool deck, and he asked Plaintiff whether he had been at the pool deck.  (DE 69-1 at 56:20-25, 57:15-17).  Plaintiff did not use profanities (and the Court would not characterize his tone as "screaming") until 3:45 and 4:02 of the TikTok Video.  (DE 64-6, TikTok Video).  Accordingly, Plaintiff's use of profanities could not have been the source of the alleged disturbance that motivated hotel security to approach him three minutes earlier in time.

Moreover, the Court's own review of the evidence shows that Plaintiff had a reasonable and non-sanctionable evidentiary basis to allege that the disturbing-guests story was false or fabricated.  (DE 20 ¶¶ 17-18).  The Court reaches this conclusion for two reasons.  First, when the hotel security guard approached Plaintiff, the guard claimed to have received a call regarding a disturbance at the pool deck.  (DE 69-1 at 56:20-23, 57:15-17).  Plaintiff responded that he had not been at the pool deck (DE 64-6 at 1:09, TikTok Video), and Defendants have presented no evidence to the contrary.  On this basis alone, Plaintiff had a reasonable basis to believe and allege that the disturbing-guests story was false, i.e., they had the wrong guy.

Second, the Court has reviewed the Rooftop Video, which shows the size of the Ocean Lawn.  (DE 64-5, Rooftop Video).  The video shows Plaintiff's movements on the lawn that morning prior to his encounter with the security guard.  Although the Rooftop Video does not

contain audio, the Court finds it doubtful – based on the size of the lawn – that Plaintiff could have generated enough noise to disturb other hotel guests, none of whom appear visible from the vantage point of the Rooftop Video.

As the Eleventh Circuit has made clear, Rule 11 sanctions over false factual allegations should be reserved only for cases that show a "deliberate indifference to obvious facts." *Riccard*, 307 F.3d at 1294.  A review of the record here does not show, as an "obvious fact," that Plaintiff was disturbing other hotel guests prior to being approached by hotel security.  As such, no sanctions should be imposed on this basis.

**3.**      **Did O'Dea direct Palm Beach Police to remove Plaintiff?**

Defendants next point to the first sentence of paragraph 17 of the Amended Complaint, which alleges as follows:

> As this conversation was progressing other staff personnel approached, and at the invitation and direction of Defendant Breakers' employee, Defendant O'Dea, four armed officers of the Palm Beach Police Department responded to the scene and drove their marked police vehicle to the location where Mr. James was standing. Am. Compl. [D.E. 20] ¶ 17.

(DE 51 at 6).   Based on the Court's review of the videotape evidence in this case, the Court finds the above allegation to be entirely true and correct and non-sanctionable.

In an effort to demonstrate the falsity of this allegation, Defendants cite to portions of Plaintiff's deposition testimony wherein he admitted he told the hotel security guard that he would not answer questions and that he expected police to be called as a result.  (DE 69-1 at 62:13–64:25).   In the Court's view, this deposition testimony does not render paragraph 17 false.  It merely provides an argument as to *why* O'Dea called the police.   The allegations themselves remain true and correct.

**4.      Did Plaintiff miss his speaking engagement?**

Defendants next point to several paragraphs of the Amended Complaint where Plaintiff

repeatedly alleged that Defendants' actions caused him to miss his speaking engagement:

> 14. Plaintiff had been invited to The Breakers Hotel by The Barbara Bush Foundation, for the Foundation's child literacy program, wherein Mr. James was to have been a guest speaker at The Breakers, and was scheduled to receive an award for his achievements, the Foundation's 2023 National Literacy Honors Award.  Mr. James was scheduled to participate in the 16th Annual Ann Norton Sculpture Gardens' Literacy Day on November 14, 2023, where he was to read to students of the Golden Grove Elementary in West Palm Beach.
>
> 15. As a consequence of the actions of the Defendants, *none of the foregoing transpired*. ….
>
> …
>
> 26.  By requiring Mr. James to leave the Hotel, the Defendants prevented Mr. James from either continuing to receive services under his existing contract with the Hotel, or to be able to continue his stay at the Hotel under a new contract. *Defendants' actions further disrupted and interfered with Plaintiff's participation as a guest speaker for the Barbara Bush Foundation, the original purpose of his stay at The Breakers.*

(DE 20 ¶¶ 14–15, 26) (emphasis added).

During the hearing on this matter, Plaintiff's counsel conceded the falsity of these

allegations and described the error as inadvertent.  Plaintiff did not miss his speaking engagement.

To the contrary, he attended the event, live streamed his speech on TikTok, and even spoke to a

reporter while at the event.   (DE 69-1 at 97:3–11).   The Court finds that the allegations in

paragraphs 14, 15 and 26 show a "deliberate indifference to obvious facts" within the meaning of

*Riccard*, 307 F.3d at 1294.  The Court also finds the allegations material since the missed speaking

engagement would have been relevant to damages had the lawsuit progressed past the motion-to-

dismiss stage.

**5.      When did O'Dea learn that Plaintiff was a guest at the hotel?**

Defendants next point to paragraph 19 of the Amended Complaint, which contains certain allegations regarding the timing of when O'Dea learned Plaintiff was a guest at the hotel.   In the original Complaint, Plaintiff alleged that O'Dea did not learn Plaintiff was a guest until *after* she ordered his removal:

> At the time Defendant O'Dea ordered Plaintiff to be ejected from the Hotel she was unaware of the fact that Mr. James was a registered guest at the hotel, but learned that he was in fact a registered guest when she stopped at the front desk while Mr. James was in his room packing his bags with a police escort.

(DE 1 ¶ 60).  Defendants used this allegation to argue, by way of a motion to dismiss, that O'Dea should be dismissed from the case because she lacked actual knowledge of a contractual relationship between Plaintiff and the hotel, a necessary element of a § 1981 claim.  (DE 12 at 7-9).

By way of the Amended Complaint, Plaintiff revised his allegations to allege that O'Dea knew and had confirmed Plaintiff's status as a guest *before* she ordered his removal:

> The Hotel employee at the scene of Mr. James' apprehension, Defendant O'Dea, *knew and had confirmed* through Hotel records that Plaintiff was both a registered guest and a scheduled guest speaker for the Barbara Bush Foundation event.  She did not disclose that information to the police officers and only informed them that Mr. James was disturbing other guests, which statement was false in fact and subterfuge for the racial profiling of Mr. James, and his wrongful ejection from the Hotel.   *Despite verifying this information, and after consulting with her supervisors, O'Dea directed the officers to evict Plaintiff.*  All of the foregoing actions of the aforesaid Hotel employee, Defendant O'Dea, approved by her supervisors, were racially motivated.

(DE 20 ¶ 19) (emphasis added).  Defendants contend the revised allegation is false and that Plaintiff had no reasonable evidentiary basis to make the allegation.  (DE 51 at 9).

The Court agrees.  The police body camera footage shows that police approached Plaintiff on the hotel lawn at approximately 9:38 a.m.  By this time, O'Dea had already instructed police to

remove Plaintiff from the property, as evidenced by Officer Rothenberg's immediate instructions to Plaintiff:

> This is private property.  The Breakers would like you to leave. …  I'm telling you right now, the Breakers does not want you here.  If you don't leave, you're gonna be arrested, OK, for trespass. …  Just so you know, you are now trespassing on private property sir.

(DE 64-1 at 9:37:02–9:37:30, Rothenberg Video).  Moments later, O'Dea reaffirmed the instruction to the police:

> Officer Burgoon:     Do you want him to leave?
>
> O'Dea:               Yes.

(DE 64-2 at 9:38:40, Burgoon Video).

Plaintiff testified that, up to that point in time, nobody, including hotel security, had asked whether he was a guest at the hotel, nor had he volunteered that information.  (DE 69-1 at 57:23 – 58:12, 78:5-9).  Nobody seemed aware of Plaintiff's status as a guest until he asked police, in the process of being removed from the property, for permission to go to his hotel room to retrieve his luggage.  (DE 64-1 at 9:40:15, Rothenberg Video).  Even then, police seemed skeptical of the claim, as one of the officers remarked to O'Dea, "He says he has a room, let's just double check just to verify."  (DE 64-2 at 9:43:35, Burgoon Video 1).  After the front desk confirmed that Plaintiff was indeed a guest and was speaking at an event later that night, O'Dea seemed surprised, remarking "So this is just becoming a bigger issue [inaudible]."  (DE 64-2 at 9:46:49, Burgoon Video 1).

Based on the totality of the evidence, the Court finds that Plaintiff had no reasonable evidentiary basis to allege in paragraph 19 of the Amended Complaint that O'Dea knew and had confirmed Plaintiff's status as a hotel guest before she ordered his removal from the property. Given that Plaintiff's counsel had all of the relevant evidence in hand before filing the Amended

Complaint, the Court finds that paragraph 19 shows a "deliberate indifference to obvious facts" within the meaning of *Riccard*, 307 F.3d at 1294.

During the hearing on this matter, Plaintiff's counsel argued that paragraph 19 should not be sanctioned because the contractual interference at issue, i.e., removal from a hotel, did not occur at a single moment in time but extended over a long temporal duration. By this logic, the interference began at 9:38 a.m. when O'Dea instructed police to remove Plaintiff from the property (DE 64-2 at 9:38:40, Burgoon Video 1), and the interference concluded at 10:09 a.m. when police physically escorted Plaintiff off the property in a police golf cart (DE 64-1 at 10:09:08, Rothenberg Video). In Plaintiff's view, the act of contractual interference continued for approximately 30 minutes, with O'Dea gaining actual knowledge of Plaintiff's status in the middle of the timeline. Despite gaining actual knowledge prior to conclusion of the interference, O'Dea nevertheless continued the interference anyway, thereby making paragraph 19 factually correct.

The Court has reviewed the Amended Complaint multiple times to search for the continuing-interference theory that Plaintiff's counsel described at the hearing, but the Court cannot find it. To the extent Plaintiff's counsel wished to plead such a theory, he should have taken steps to clarify the Amended Complaint when confronted with the Rule 11 letter and motion in April 2025. As currently drafted, the Court finds paragraph 19 to be factually false. The Court further finds paragraph 19 to be material since O'Dea's knowledge of the contractual relationship between Plaintiff and the hotel would have been relevant to the § 1981 claim had the District Judge not dismissed that claim on other grounds.

### 6. Did Defendants Act with Discriminatory Intent?

In sum, the Court finds that only two of the "key facts" identified in Defendants' motion violate Rule 11(b)(3). To the extent Defendants seek sanctions over allegations concerning the

ultimate factual issue of Count 1, i.e., whether Defendants acted with discriminatory intent,[1] the Court declines to recommend sanctions.  The Court recognizes that the District Judge dismissed this case with prejudice for failure to allege facts giving rise to a plausible inference of discriminatory intent.  (DE 49 at 8).  The mere fact that a complaint does not survive dismissal does not mean, *ipso facto*, that Rule 11 sanctions should be imposed.  *E.g.*, *Feingold v. Budner*, No. 08-cv-80539, 2010 WL 917314, at *4 (S.D. Fla. March 11, 2010).  After reviewing all of the videos and other evidence submitted, the Court finds that Plaintiff made weak, but not sanctionable, allegations of discriminatory intent.  *See Riccard*, 307 F.3d at 1294 (noting that sanctions should not be imposed "when the party's evidence to support a claim is merely weak").

### C.    Amount of Sanction

Sanctions should nevertheless be issued for the Amended Complaint's misrepresentations concerning Plaintiff's missed speaking engagement (DE 20 ¶¶ 14–15, 26) and the timing of O'Dea's knowledge (DE 20 ¶ 19).  Rule 11 requires a district court to fashion an appropriate sanction based upon the nature of the violation, using the following criteria:

> (4) Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4).  The rule gives courts "discretion to tailor sanctions to the particular facts of the case."  *Id.* at Advisory Committee Notes (1983 Amendments).

Here, the sanctionable misrepresentations, although material to the lawsuit, had no bearing on the outcome.  That is to say, the District Judge dismissed the case with prejudice even though

---

[1] Plaintiff alleged that Defendants acted with discriminatory intent numerous times in the Amended Complaint, including paragraphs 29, 47, 49, 50.  (DE 20).

the Amended Complaint falsely alleged that Plaintiff missed his speaking engagement and that O'Dea knew Plaintiff was a guest before she removed him.

The Court nevertheless finds that reasonable sanctions should be imposed to deter future misconduct of this type.  The purpose of Rule 11's safe harbor provision is to allow lawyers a reasonable opportunity to correct the types of material factual misrepresentations identified here. Plaintiff's counsel, when confronted with Defendants' Rule 11 letter and motion in April 2025, should have taken steps to correct these pleading issues.  As a sanction, the Court recommends that Plaintiff's counsel Ronald Weil be ordered to pay $1,000 into the registry of the court.  *See* Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments) ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty.").

The Court considered ordering Plaintiff's counsel, as part of this sanction, to reimburse Defendants for the costs of bringing the instant motion.  The Court declines to make this recommendation because Defendants lost the bulk of arguments raised in this motion and because Defendants made their own misrepresentation to the Court as discussed in part III.B.1 above.

### D.  Deposition Conduct

Finally, the Court makes an additional recommendation sua sponte.  While the Court had this matter under advisement, the Court ordered Defendants to file a complete copy of Plaintiff's deposition into the record.  (DE 68).  The Court reviewed the entire deposition.  The Court was surprised by the deposition conduct of Plaintiff's counsel, including his repeated speaking objections and attempts to demean and insult his opposing counsel, including by referring to the deposition as "an amateur hour event."  (DE 69-1 at 84:2).  The Court found the following exchange the most troubling:

Q.      Did it get captured on any of your live feed?

A.      I think so, yes.

Q.      Okay.

MR. WEIL:  For counsel's reference it's also on the cop's feed.

MS. GRIFFIN GOODMAN:  I don't think I asked a question about that.  Thanks, Ron.

MR. WEIL:  You're welcome, Smily.

MS. GRIFFIN GOODMAN:  What did you call me?

MR. WEIL:  Smily.  You were smiling.

(DE 69-1 at 123:14-25).

Juvenile name calling has no place among lawyers practicing before this court.  Pursuant to Rule 6(c)(1) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys, the Court recommends that Ronald Weil be referred to the Committee on Attorney Admissions, Peer Review, and Attorney Grievance.  The committee shall investigate this referral and make appropriate recommendations, in its discretion, for peer review or discipline or both in accordance with the Southern District of Florida's Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys.

### IV.   **RECOMMENDATION & NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, the undersigned **RECOMMENDS** as follows:

1.      Defendants' Second Motion for Sanctions should be **GRANTED IN PART.**

2.      Rule 11 sanctions should be imposed on Plaintiff's counsel Ronald Weil in the amount of $1,000, payable into the registry of the court within 30 days of the date the District Judge adopts this Report and Recommendation.  Plaintiff's counsel should file a notice of compliance within 30 days after making the payment.

3.     In addition, Ronald Weil should be referred to the Committee on Attorney Admissions, Peer Review, and Attorney Grievance based on the deposition conduct identified above.   The committee shall investigate this referral and make appropriate recommendations, in its discretion, for peer review or discipline or both in accordance with the Southern District of Florida's Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys.

4.     The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

5.     **IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 12th of February 2026.

_____
RYON M. MCCABE
U.S. MAGISTRATE JUDGE

21